**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 2 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEANCO HEALTHCARE, LLC, DBA
Mission Community Hospital, a California
limited liability company,

Plaintiff-Appellant,

v.

XAVIER BECERRA, in his official capacity
as the Attorney General for the State of
California; OFFICE OF THE ATTORNEY
GENERAL FOR THE STATE OF
CALIFORNIA; STATE OF CALIFORNIA,

Defendants-Appellees.

No.    19-55155

D.C. No.
2:18-cv-03934-ODW-PJW

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Submitted March 31, 2020**
Pasadena, California

Before:  CALLAHAN, LEE, and VANDYKE, Circuit Judges.

This case concerns the legality of certain "charity care" conditions imposed

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

by the California Attorney General upon Plaintiff-Appellant Deanco Healthcare, LLC ("Deanco"), in connection with Deanco's acquisition of Mission Community Hospital ("Mission") in Los Angeles in 2013.  The conditions, imposed pursuant to Title 11, Section 999.5 of the California Code of Regulations (11 C.C.R. § 999.5), require Deanco to incur annual thresholds of charity care costs at Mission "based on the historic level of charity care that the hospital . . . provided" before its acquisition by Deanco.[1]  11 C.C.R. § 999.5(f)(8)(B).  If in any particular year Deanco's *actual* charity care costs fall below the annual threshold, Deanco is required to pay the difference "to a nonprofit public benefit corporation for direct medical care to residents in [Mission's] primary service area."

Although Deanco agreed to these conditions when it obtained state approval to purchase Mission in 2010 and again when its purchase closed in 2013, it now argues that compliance with them has been made "impossible" by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) ("ACA"), which has increased the number of Californians with health insurance and thereby lowered the demand for charity care in the state.  Specifically, Deanco argues that its annual charity care costs, now untethered from actual charity care

---

[1]  "Charity care costs" refer to those costs incurred by hospitals, in connection with the provision of health care, in the form of "an allowance that is applied after the hospital's charges are imposed on the patient, due to the patient's determined financial inability to pay the charges."  Cal. Health & Safety Code § 127400(a).

demand in the local community, has forced it to divert "millions of dollars [in unrealized profits] . . . from the hospital at the expense of improvements to the delivery of healthcare for the Hospital's patients." This diversion of profits, claims Deanco, inhibits the ACA's "goal of improved healthcare delivery."

Deanco sought declaratory and injunctive relief invalidating its charity care obligation on federal preemption and (now abandoned) state law grounds. The district court dismissed Deanco's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction (with respect to the Office of the Attorney General) and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[2]

1. Deanco waived its claim that the Office of the Attorney General ("OAG") is not entitled to immunity under the Eleventh Amendment by failing to provide relevant argument in support of the claim in its opening brief. *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999) (finding arguments raised for first time in reply brief to be waived); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (same). Even absent waiver, Deanco's claim fails because none of the exceptions to Eleventh Amendment immunity for state officials applies here. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

---

[2] Because the parties are familiar with the facts of this case, we do not discuss them further here.

89, 99-101 (1984) (explaining that states and state officials are immune from suit unless Congress abrogates immunity, the state consents to suit, or, under the *Ex Parte Young* doctrine, a state official is sued in his or her official capacity for prospective declaratory and/or injunctive relief) (citing *Ex Parte Young*, 209 U.S. 123, 166 (1908)). In its reply brief, Deanco cites, for the first time, *North Carolina State Bd. of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101, 1113-14 (2015), but that antitrust case has no clear application to Deanco's constitutional claims or the facts at issue here.

2.      Deanco's argument that the ACA preempts its annual charity care obligation ignores the ACA's express preemption clause, which provides that "[n]othing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title." 42 U.S.C. § 18041(d); *see St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022 (8th Cir. 2015) (noting that this "narrow" preemption clause only implicates "state laws that 'hinder or impede' the [ACA's] implementation"); *cf. Coons v. Lew*, 762 F.3d 891, 902 (9th Cir. 2014) (invalidating an Arizona law that was in *direct* contravention of the ACA's individual mandate provision). Unlike the Arizona law at issue in *Coons*, California's annual charity care regulation—both facially and as applied to Deanco—does not "prevent the application of" the ACA's provisions; nor does it "stand[] as an obstacle to the accomplishment and execution of the [ACA's] full

purposes and objectives." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (internal quotation marks and citation omitted). Contrary to Deanco's argument, the objectives of the ACA are "to increase the number of Americans covered by medical insurance and to decrease the cost of medical care," *Coons*, 762 F.3d at 895, not "improved healthcare delivery . . . through reinvestment [of profits] in the hospital's services, doctors, and infrastructure."[3]

Deanco's preemption argument as to the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA"), 42 U.S.C. § 1395dd, a law requiring hospitals to provide emergency care regardless of the patient's ability to pay, likewise fails. Deanco argues that "[f]orcing hospitals to maintain the same level of charity care while the number of uninsured plummets . . . expands the requirements of EMTALA that Congress [sic] never intended." But this argument assumes that 11 C.C.R. § 999.5 is intended as an implementing regulation for the EMTALA, which it is not. *See Prime Healthcare Services, Inc. v. Harris*, 216 F. Supp. 3d 1096, 1101-02 (S.D. Cal. 2016). In any case, the charity care requirement does not stand as an obstacle to any aspect of the EMTALA. If

---

[3] In arguing that the ACA's purpose is "to improve . . . the *delivery* of health care services to all individuals," Deanco cites Section 5001 of the ACA. But that section, which falls under Title V of the law, pertains to improvements to the health care workforce, not the individual mandate, Medicaid expansion, health benefit exchanges, or Medi-Cal—the four core components of the ACA upon which Deanco bases its preemption argument.

anything, these two requirements—one regulatory (via the State of California) and one statutory (via Congress)—are consistent and mutually reinforcing.

3. Deanco waived its equal protection claim by failing to raise that claim in its complaint. *See Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007). Even absent waiver, Deanco's argument fails because (1) it does not allege or offer evidence that other similarly situated buyers of nonprofit hospitals were *not* subject to an annual charity care obligation, and (2) it has not shown how the delivery of charity care to Mission's local community—either *directly* at Mission or *indirectly* through support to local nonprofits—is not rationally related to a valid public interest. *See Prime Healthcare Services, Inc.*, 216 F. Supp. 3d at 1116-19.

4. Because we find no error in the district court's dismissal of Deanco's preemption claims and no merit in Deanco's equal protection claim, we necessarily reject Deanco's argument that "Defendants' abuse of discretion underscores the unconstitutionality of their actions." Furthermore, as the district court recognized, we lack jurisdiction to consider whether the Attorney General abused his discretion under 11 C.C.R. § 999.5 when he denied Deanco's requested decrease in its annual charity care obligation. *See Pennhurst*, 465 U.S. at 124-25 (holding that federal courts lack jurisdiction to enjoin "state institutions and state officials on the basis of" state law).

AFFIRMED.

6